**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: February 11 2013

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 12-31794 |
| | ) | |
| Antwoine C. Perrin, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 12-3125 |
| | ) | |
| Lucas County Department of | ) | Hon. Mary Ann Whipple |
| Job & Family Services, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Antwoine C. Perrin, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF DECISION

This adversary proceeding is before the court for decision after trial on a complaint filed by Plaintiff Lucas County, Ohio Department of Job and Family Services ("Plaintiff" or "the Agency") to determine dischargeability of a debt for food assistance overpayments that is owed to it by Defendant Antwoine C. Perrin, the debtor in the underlying chapter 7 case who is representing himself in this adversary proceeding. Plaintiff alleges that the debt should be excepted from discharge under 11 U.S.C. § 523(a)(2)(A) and (B).

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising in or related to a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7

of the United States District Court for the Northern District of Ohio. Proceedings to determine dischargeability of debts are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(I). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of the witness, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that Plaintiff is entitled to judgment in its favor on its claim under § 523(a)(2)(A).

## FINDINGS OF FACT

At trial, Plaintiff presented one witness, Lisa Palmer, a fraud investigator for Lucas County Job and Family Services. Palmer authenticated documents that are part of the Agency's records and that were admitted without objection as exhibits in this proceeding. Included in those exhibits are statements signed by Defendant on October 20, 2009, and March 9, 2010, stating that he lives with his three children at 916 St. John Avenue, Toledo, Ohio, and that his wife, Angela Northrip-Perrin does not live at that address. [Pl. Exs. 5 and 11]. The statements were submitted to the Agency by Defendant in connection with his applications for food assistance. Most significantly, also included in Plaintiff's trial exhibits are the following two administrative decisions.

The first decision, captioned "State Hearing Decision," was issued on November 21, 2011 ("Overpayment Decision"). The Agency had notified Defendant that he had received food assistance overpayments of $4,097.00 for the period of September 1, 2009, through May 31, 2010, and $5,478.00 for the period of October 1, 2008, through August 30, 2009. [Pl. Ex. 1, p. 1]. Defendant requested a state hearing on the Agency's determinations. [*Id.*]. At issue was whether Defendant's wife lived in the same household with him and his children during the time periods that he received food assistance payments. If she lived in the household, her income had to be included in the benefits eligibility consideration and the applicable eligibility limitations would have been exceeded.

The Ohio Department of Job and Family Services Bureau of State Hearings held a hearing by telephone on November 7, 2011, ("Overpayment Hearing"). Defendant was present at the Overpayment Hearing and had the opportunity to present documentation that his wife did not live with him and to argue his case. [*See id.* at 1, 3]. The state hearing officer noted that the Agency was pursuing the overpayments as "inadvertent household errors" under the Ohio Administrative Code. Ohio Admin. Code § 5101:4-8-15(C)(2); [*see id.* at 1,2]. Based on evidence submitted by the Agency, however, the state hearing officer

2

agreed that the food assistance overpayments had been made and agreed with the amount of the overpayments determined by the Agency, finding that Defendant's wife lived in the same home as him and his children and that he "certified and received [food assistance] benefits as a four person household when eligibility should have been calculated based on a five person household and including the wife's income." [*Id.* at 3]. The state hearing officer's recommendation that Defendant's appeal be overruled was found to be supported by the evidence and was adopted as a final administrative decision and order of the Ohio Department of Job and Family Services. [*Id.*].

The second decision is an Administrative Disqualification Hearing Decision issued by the Ohio Department of Jobs and Family Services Bureau of State Hearings on August 31, 2012 ("Disqualification Decision"). [Pl. Ex. 2]. The Agency referred Defendant's case for hearing ("Disqualification Hearing"), this time alleging that he "committed and intended to commit an intentional program violation in the program of Food Assistance" and that he "falsified several applications by failing to report his wife was living with him." [*Id.* at 1, 2]. The purpose of this second administrative proceeding was to determine whether the program violation was intentional and whether any additional administrative penalty should be assessed to Defendant. Although Defendant received notice by certified and regular mail, he did not appear at the hearing. [*Id.* at 1]. The state hearing officer found that in March 2008, Defendant had completed and signed an application for food assistance benefits, listing himself, his wife and their three children as household members and had been denied such benefits due to his wife's income. [*Id.* at 2]. The state hearing officer found that Defendant committed an intentional program violation by later submitting false applications for food assistance that were signed by him and submitted to the Agency on October 1, 2008, October 16, 2008, and March 9, 2009, and that listed only himself and his three children as members of his household and stated that his wife's current address and employer were "unknown." [*Id.* at 2-5]. The state hearing officer further found by clear and convincing evidence that Defendant committed an intentional program violation by supplying to the Agency his notarized statement that his wife was living with her mother. [*Id.* at 4-5]. The state hearing officer recommended that the Agency's determination that Defendant committed an intentional program violation be upheld. [*Id.* at 5]. The final administrative decision and order states that the recommendation was supported by the evidence and upheld the Agency's determination. [*Id.*].

Other documents offered by Plaintiff and admitted without objection include documents submitted at the administrative hearings. Those documents include a landlord inquiry signed by Defendant's mother-in-law stating that Defendant's wife was living with her and paying rent [Doc. # 4], a October 2009 sworn

3

statement of his wife that she did not live with Defendant [Doc. # 6], documents relating to a Lucas Metropolitan Housing Authority hearing to determine the eligibility of Defendant's mother-in-law to participate in a housing subsidy program, which include statements by both Defendant's wife and his mother-in-law that his wife did not live with her mother [Doc. ## 7& 8], and various other documents showing Angela Northrip-Perrin's address as the same address as Defendant's on St. John Avenue in Toledo [Doc. ## 12-15].[1]

## LAW AND ANALYSIS

Plaintiff seeks a determination that the debt owed to it by Defendant for food assistance overpayments is nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (B). Section 523(a)(2)(A) excepts from discharge a debt "for money, property, [or] services,. . . to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . ." While § 523(a)(2)(A) applies to fraudulent misrepresentations other than a statement respecting the debtor's financial condition, § 523(a)(2)(B) applies to fraud based upon such a statement when the statement is in writing.

**I. 11 U.S.C. § 523(a)(2)(B)**

With respect to § 523(a)(2)(B), Plaintiff alleges that it relied on Defendant's false written statements claiming that his wife was not living at his residence. However, the phrase "respecting the debtor's . . . financial condition" has been interpreted narrowly by the Bankruptcy Appellate Panel of the Sixth Circuit to mean "statements that are made regarding a debtor's overall net worth, assets and liabilities." *Prim Capital Corp. v. May (In re May)*, 368 B.R. 85 (Table), 2007 WL 2052185, at *7, 2007 Bankr. LEXIS 2335, *20 (B.A.P. 6th Cir. July 19, 2007). And while the Sixth Circuit has not "defined exhaustively the boundaries" of this provision, it has held that statements that "did not list the [debtors'] financial obligations or document their ability to pay their creditors" . . . were not statements respecting their 'financial condition.'" *Livingston v. Transnation Title Ins. Co. (In re Livingston)*, 372 Fed. Appx. 613, 616-17 (6th Cir. 2010); *see Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 89-90 (6th Cir. 1993) (finding that the debtor made "'statements in writing respecting the debtor's or an insider's financial condition' under section 523(a)(2)(B) because [the debtor] submitted written statements . . . which plainly showed his net worth"). Defendant's statements regarding where his wife lived are not statements regarding his financial

---

[1]These document are rife with objectionable hearsay. But given the legal analysis set forth below, these hearsay laden documents and the equally hearsay laden testimony that authenticated them form no part of the court's decision. Their admission without objection ultimately made no difference in the outcome of the trial.

4

condition within the meaning of § 523(a)(2)(B). Plaintiff has not met its burden of proof under § 523(a)(2)(B). The court thus addresses Plaintiff's § 523(a)(2)(A) claim.

## II. 11 U.S.C. § 523(a)(2)(A)

In order to except a debt from discharge under § 523(a)(2)(A) due to false pretense or false representation, a plaintiff must prove the following elements by a preponderance of the evidence: (1) the debtor obtained money, property, services or credit through a material misrepresentation, either express or implied, that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) the creditor's reliance was the proximate cause of loss. *AT&T Universal Card Services, Inc. v. Rembert (In re Rembert),* 141 F.3d 277, 280-81 (6th Cir. 1998). A debtor's intent to defraud a creditor is measured by a subjective standard and must be ascertained by the totality of the circumstances of the case at hand. *Id.* at 281-82. A finding of fraudulent intent may be made on the basis of circumstantial evidence or from the debtor's "course of conduct," as direct proof of intent will rarely be available. *Hamo v. Wilson (In re Hamo),* 233 B.R. 718, 724 (B.A.P. 6th Cir. 1999).

In this proceeding, Plaintiff claims that Defendant received food assistance payments that he was not entitled to receive as a result of Plaintiff's reliance on Defendant's false representations that his wife was not living in his home during the time period from October 1, 2008, through May 31, 2010. There is no dispute that Defendant received food assistance payments based upon his representations relating to his eligibility for such payments, which included representations that his wife was not living in his home. At issue in this adversary proceeding is whether Defendant's representations were false and made with the intent to deceive the Agency. In support of its claim, Plaintiff has offered the administrative hearing decisions relating to assessment of the food assistance overpayments received by Defendant and his disqualification from the food assistance program.

While the federal full faith and credit statute, 11 U.S.C. § 1738, applies only to judgments of a court and does not compel that full faith and credit be given to unreviewed decisions of administrative agencies, the United States Supreme Court has nevertheless fashioned a common law rule of preclusion that is applicable to such decisions. *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 796-99 (1986). In *Elliott*, the Supreme Court held that, unless Congress has indicated an intent to create an exception to general rules of preclusion, "when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Id.*

5

(quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)); *Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 547 (6th Cir. 2012). There is no indication in § 523 of the Bankruptcy Code that Congress intended to create an exception to this general common law rule of preclusion. For the reasons that follow, the court finds that the doctrine of issue preclusion, as applied by Ohio courts, is applicable to the Overpayment Decision and the Disqualification Decision.

First, the court finds that the requirements of *Elliott* are met such that the court must look to Ohio law to determine the preclusive effect of the two administrative decisions at issue in this proceeding. The Sixth Circuit has held that "[a]n administrative board acts in a judicial capacity when it hears evidence, gives the parties an opportunity to brief and argue their versions of the facts, and the parties are given an opportunity to seek court review of any adverse findings." *Herrera*, 680 F.3d at 547 (quoting *Nelson v. Jefferson County*, 863 F.2d 18, 19 (6th Cir. 1988)). Under the Ohio Administrative Code, procedures for state administrative hearings include the opportunity of the individual to examine all records and documents to be used by the Agency at the hearing, to call witnesses and submit evidence to establish all pertinent facts, to advance arguments and to question or refute any testimony or evidence, including the opportunity to confront and cross-examine adverse witnesses. Ohio Admin. Code §§ 5101:6-6-02(B) and 5101:6-20-15(B)(6). An individual also has the right to request the issuance of subpoenas and be represented by legal counsel at intentional program violation disqualification hearings. Ohio Admin. Code § 5101:6-20-15(A)(2) and (B)(1).

Defendant was present at the Overpayment Hearing and offered evidence and argument at the hearing. Although he did not attend the Disqualification Hearing, he was provided proper notice of the hearing such that he had an opportunity to present his version of the facts to the state hearing officer. In addition, both administrative and judicial review of the Overpayment Decision were available and judicial review of the Disqualification Decision was available. *See* Ohio Rev. Code § 5101.35(C) and (E); Ohio Admin. Code § 5101:6-20-19(C). These circumstances demonstrate that the Agency decisions at issue were the result of administrative proceedings that were judicial in nature and that Defendant had at least an adequate opportunity to litigate the facts determined in those proceedings. *See Herrera,* 680 F.3d at 547-49 (stating that "a full and fair opportunity to litigate does not require any 'single model of procedural fairness, let alone a particular form of procedure'" and finding the *Elliott* requirements satisfied where the party had the opportunity to submit evidence, respond to evidence submitted by opposing party, and where administrative reconsideration and judicial review were available).

In addition, the issue to be decided at the Overpayment Hearing was whether Defendant received

6

food assistance payments that he was not entitled to receive because his wife lived in his household during the time periods that were in question. Thus, the factual determinations that his wife did not live in his household during the time periods for which the Agency was pursuing the overpayments and that he received food assistance overpayments in the amount asserted by the Agency based on his eligibility as a four-person household were factual issues properly before the hearing officer. The issue to be decided at the Disqualification Hearing was whether Defendant committed an "intentional program violation," which is defined as "an action by an individual, for the purpose of . . . acquiring, receiving, or possessing food stamp benefits that is intentionally: (1) [a] false or misleading statement, or a misrepresentation, concealment or withholding of facts. . . ." Ohio Admin. Code § 5101:6-20-02(B)(1). Thus, factual issues as to whether Defendant submitted intentionally false statements in order to obtain food assistance benefits as determined in that proceeding were properly before the hearing officer.

Having found the *Elliott* requirements satisfied, this court must give the Agency's factfinding the same preclusive effect to which it would be entitled in Ohio courts. Similar to the *Elliott* requirements, the Ohio Supreme Court has held that "'the doctrine of res judicata, whether claim preclusion or issue preclusion, applies to administrative proceedings that are of a judicial nature and where the parties have had an ample opportunity to litigate the issues involved in the proceedings.'" *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 381 (1995) (quoting *Set Prod., Inc. v. Bainbridge Twp. Bd. of Zoning Appeals*, 31 Ohio St. 3d 260, syllabus ¶ 1 (1987)); *In re Lima Memorial Hosp.*, 111 Ohio App. 3d 225, 229 (1996) (stating collateral estoppel is applicable "to administrative hearings of a quasi-judicial nature"). As discussed above, these requirements are met. *See id.* ("Administrative proceedings are deemed quasi-judicial if notice, a hearing and an opportunity to introduce evidence are afforded.").

Under Ohio law, there are four elements to the application of the doctrine of collateral estoppel: (1) a final judgment on the merits after a full and fair opportunity to litigate the issue; (2) the issue was actually and directly litigated in the prior action and must have been necessary to the final judgment; (3) the issue in the present suit must have been identical to the issue in the prior suit; and (4) the party against whom estoppel is sought was a party or in privity with the party to the prior action. *Sill v. Sweeney (In re Sweeney),* 276 B.R. 186, 189 (B.A.P. 6th Cir. 2002); *Cashelmara Villas Ltd. P'ship v. DiBenedetto*, 87 Ohio App. 3d 809, 814 (1993)(quoting *Monahan v. Eagle Picher Indus., Inc.*, 21 Ohio App.3d 179, 180-81 (1984)). Collateral estoppel, or issue preclusion, "precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action." *MetroHealth Med. Ctr. v. Hoffmann-LaRoche, Inc.*, 80 Ohio St. 3d 212, 217 (1997). The person asserting collateral estoppel carries the burden of pleading and

7

proving its requirements by a preponderance of the evidence. *Am. Fiber Sys., Inc. v. Levin,* 125 Ohio St. 3d 374, 378 (2010)(citing *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St. 3d 193, 198 (1983)); *A Packaging Service Co. v. Siml (In re Siml),* 261 B.R. 419, 422 (Bankr. N.D. Ohio 2001).

It is undisputed that Defendant was a party to the administrative proceedings at issue. There is also no dispute that the Overpayment Decision and the Disqualification Decision are final decisions on the merits. *See Grava,* 73 Ohio St. at 230 (applying res judicata where party failed to appeal zoning board's denial of request); *Wade v. City of Cleveland*, 8 Ohio App. 3d 176, 177 (1982) (stating res judicata applies to actions before an administrative body where there has been no appeal). And, as discussed earlier, Defendant was afforded a full and fair opportunity to litigate the issues decided in those proceedings. Thus, the first and fourth elements under *Sweeney* are satisfied.

As to the second and third elements, Plaintiff's § 523(a)(2)(A) claim is based upon its assertion that Defendant intentionally misrepresented the fact that his wife was not living in his home for the purpose of deceiving the Agency in order to receive food assistance benefits. The truth or falsity of Defendant's representations was actually and directly litigated at both the Overpayment Hearing and the Disqualification Hearing, and the representations were found to be false. Further, whether Defendant made intentionally false statements for the purpose of obtaining food assistance benefits was actually and directly litigated at the Disqualification Hearing. Based upon Defendant's false representations that his wife was not living with him, the state hearing officer found that he concealed information regarding his household composition and committed an intentional program violation, which, as stated above, is defined as an intentionally false or misleading statement made for the purpose of acquiring or receiving food assistance benefits. *See* Ohio Admin. Code § 5101:6-20-02. And the fact that overpayments were made and, thus, an Agency loss incurred, was also determined at the Overpayment Hearing. As to these issues, the second and third elements under *Sweeney* are satisfied.

As all elements under *Sweeney* are satisfied, Defendant is now estopped in this court from challenging the Agency's determination that he intentionally misrepresented that his wife did not live in his home, a fact that was material to determining his eligibility to receive food assistance benefits, and that he did so with the intent to deceive the Agency in order to receive such benefits. Were this court free to decide on the basis of the other evidence presented at trial in this court, it would decide differently. The record is replete with hearsay from others with a motive to lie obvious even from the documents. But in a nutshell that is the essence of the doctrine of issue preclusion afforded prior decisions as applied by both the United States Supreme Court and the Ohio Supreme Court: the second judicial body is not free to disregard

8

facts already determined in the first judicial or, in this case, administrative body.

While reliance was not specifically litigated or determined at the administrative hearings, the facts demonstrating the Agency's reliance on Defendant's representations were litigated and determined. The Overpayment Decision states that Defendant was certified as a four-person household and received food assistance benefits as a four-person household, rather than a five-person household had his wife been included in determining Defendant's eligibility. On these facts, together with factual findings that Defendant represented on his applications for benefits, as well as on other documents, that his wife did not live with him and that he submitted a Landlord Inquiry to the Agency that stated that his wife lived with his mother, convinces the court that the Agency not only relied, but justifiably relied, on Defendant's representations. It is also clear that such reliance was the proximate cause of the losses incurred by the Agency due to the overpayments to Defendant. Accordingly, the court finds that Plaintiff has met its burden of proving by a preponderance of the evidence that the debt owed it by Defendant is nondischargeable under § 523(a)(2)(A).

### III. Attorney Fees

In its Complaint, Plaintiff also seeks an order requiring Defendant to pay its attorney fees incurred in prosecuting this adversary proceeding. Rule 7008(b) of the Federal Rules of Bankruptcy Procedure provides: "A request for an award of attorney's fees shall be pleaded as a claim in a complaint, cross-claim, third-party complaint, answer, or reply as may be appropriate." Thus, attorney's fees must be sought in a bankruptcy adversary proceeding by a separate count of the complaint or other pleading and not merely in the prayer for relief. *E.g.*, *Leonard v. Onyx Acceptance Corp.*, Nos. 02-8125, Civ. 03-1117 ADM, 2003 U.S. Dist. LEXIS 6307, *5, 2003 WL 1873283, at *2 (D. Minn. Apr. 11, 2003); *Hartford Police F.C.U. v. DeMaio (In re DeMaio)*, 158 B.R. 890, 892-93 (Bankr. D. Conn. 1993); *Garcia v. Odom (In re Odom)*, 113 B.R. 623, 625 (Bankr. C.D. Cal. 1990); *see V.M. v. S.S. (In re S.S.)*, 271 B.R. 240, 244 (Bankr. D.N.J. 2002). Plaintiff's complaint is a single count, which does not set forth a claim or basis for an award of attorney's fees incurred in this proceeding. Plaintiff's attorney's fee request is found only in the prayer for relief.

Moreover, there is no basis in the Bankruptcy Code for an award of attorney's fees to a creditor successfully prosecuting a § 523(a)(2) claim. *Cf.* 11 U.S.C. § 523(d)(debtors shall be awarded attorney's fees in certain circumstances not present here). Nothing in § 523(a)(2) indicates that Congress intended the prevailing party to be awarded fees.

### **CONCLUSION**

In light of the foregoing, the court finds that Plaintiff has met its burden of proof and is entitled to

9

judgment of non-dischargeability on its claim brought under 11 U.S.C. § 523(a)(2) (A). The court will enter a separate judgment in accordance with this memorandum of decision.

###